IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AMICABLE LIFE INSURANCE COMPANY OF TEXAS, (PIONEER AMERICAN INSURANCE),<br><br>Defendants. | Civil Action No. 4:21-cv-3416<br><br>**<u>Jury Trial Demanded</u>** |

## AMENDED COMPLAINT

RICHARD HENDERSON (hereinafter referred to as "Plaintiff"), by and through his attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against AMERICAN AMICABLE LIFE INSURANCE COMPANY OF TEXAS (hereinafter referred to as "AMERICAN AMICABLE") and PIONEER AMERICAN INSURANCE (hereinafter referred to as "PIONEER") (hereinafter collectively referred to as "Defendants"):

### INTRODUCTION

1. Plaintiff's Amended Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*.

### JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See <u>Mims v. Arrow Fin. Servs., LLC</u>, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendants because both Defendants maintain a principal place of business in the State of Texas and because the occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer injury in the State of Texas.

4. Venue is proper pursuant to 28 U.S.C. §1391 (b)(2).

**PARTIES**

5. Plaintiff is a natural person residing in League City, Texas 77573.

6. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

7. AMERICAN AMICABLE is a business entity with a principal place of business, head office, or otherwise valid mailing address at 425 Austin Avenue, Waco, Texas 76701.

8. AMERICAN AMICABLE is a "person" as that term is defined by 47 U.S.C. §153(39).

9. PIONEER is a business entity with a principal place of business, head office, or otherwise valid mailing address at 425 Austin Avenue, Waco, Texas 76701.

10. PIONEER is a "person" as that is defined by 47 U.S.C. §153(39).

11. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

12. At all times relevant hereto, Plaintiff, Richard Henderson, maintained a cell phone, the number for which was (281) XXX-2765.

13. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on May 13, 2010.

PLAINTIFF'S AMENDED COMPLAINT

14. At all times relevant hereto, Plaintiff, Richard Henderson, maintained a cell phone, the number for which was (832) XXX-7629.

15. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on November 11, 2010.

16. Plaintiff's cellular telephones are primarily used for residential purposes.

17. Mr. Henderson registered these cell phone numbers on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

18. Defendants are insurance agencies that sell to consumers, *inter alia*, life insurance policies.

19. Pioneer and American Amicable are associated insurance companies.

20. Upon information and belief, Pioneer is a company that operates within the umbrella organization, American Amicable.

21. Defendants hire telemarketers who do not disclose their identities to sell Amicable and Pioneer insurance policies.

22. Upon information and belief, Defendants worked in concern and contracted with telemarketers whose identities remain unknown.

23. Between July 2020 through at least March of 2021, Defendants placed a series of solicitation calls to Plaintiff in order to sell Plaintiff a life insurance policy.

24. Mr. Henderson did not consent to those calls from Defendants.

25. Defendants' solicitation calls were not made for "emergency purposes."

26. Defendants knew their calls were unwanted, therefore, all calls could have only been made solely for purposes of harassment.

27. Defendants' incessant calls were bothersome, disruptive, and frustrating for Plaintiff to endure.

28. In total, Defendants placed at least 18 calls to Plaintiff, at date/times including the following calls to his personal phone ending in 2765.

| Date/Time: | Caller ID: |
| --- | --- |
| July 1, 2020 4:30 pm Central | (281) 571-0865 |
| July 17, 2020 12:46 pm Central | (281) 929-3263 |
| July 24, 2020 3:57 pm Central | (281) 544-3353 |
| October 5, 2020 2:22 pm Central | (281) 390-5970 |
| November 4, 2020 4:25 pm Central | (281) 658-9707 |
| February 17, 2021 2:45 pm Central | (561) 855-5956 |
| February 17, 2021 2:57 pm Central | (561) 316-1353 |
| March 3, 2021 2:42 pm Central | (270) 341-3324 |
| March 15, 2021 7:00 pm Central | (937) 610-1765 |

29. Upon information and belief, Plaintiff received additional calls to the phone number ending in 2765 from Defendants not included in the above list.

30. Plaintiff additionally received calls to the phone number ending in 7629 which is maintained by Plaintiff, including the following calls:

| Date/Time: | Caller ID: |
| --- | --- |
| November 2, 2020 1:40 pm Central | (832) 232-0163 |
| November 9, 2020 4:12 pm Central | (832) 256-5401 |
| December 4, 2020 10:03 am Central | (832) 286-8275 |
| December 4, 2020 10:54 pm Central | (832) 260-0151 |
| December 8, 2020 3:00 pm Central | (832) 239-1950 |
| February 1, 2021 6:40 pm Central | (832) 298-2074 |
| February 16, 2021 9:08 am Central | (832) 247-4620 |
| February 17, 2021 2:24 pm Central | (832) 290-1572 |
| March 18, 2021 7:19 pm Central | (832) 252-5317 |

31. Upon information and belief, Plaintiff received additional calls from Defendants not included in the above-list.

32. Many of the calls placed by Defendants to Mr. Henderson began with a pause followed by a beep, which was then followed by someone greeting Mr. Henderson, but only after Mr. Henderson spoke.

33. For instance, in a call placed by Defendants on February 17, 2021, when Plaintiff answered the call there was a long pause, followed by a beep, then a representative answered the phone stating he was "John with American Senior Benefits." The representative began asking Plaintiff personal questions to which Plaintiff stated he would only discuss these matters with a licensed agent. Following Plaintiff's refusal to disclose personal information with any individual other than a licensed agent, the line was disconnected.

34. Defendants' utilized an automatically generated and/or pre-recorded voice when calling Plaintiff.

35. During the October 5, 2020 call, it was apparent that Defendants utilized "soundboard technology" where pre-recorded audio clips are played to "interact" with a consumer with the intention of making the consumer believe s/he is communicating with a live person.

36. Plaintiff answered a call from Defendants on October 5, 2020 where Defendants were selling a low cost final expense insurance plan. In that call, Defendants utilized "soundboard" technology which purported to be a man named "James." The voice at times sounded computerized and at times sounded like a live person. As the interaction progressed, it was clear Plaintiff was not speaking with an actual person but with a soundboard system and the natural sounded voice was pre-recorded. For instance, Plaintiff asked the voice who he was supposed to be talking to. The voice responded, "Now I have one of my insurance consultants who will further assist you, so please stay with me, okay?" Plaintiff, responded by telling the

voice he would not be giving him the information because he wasn't the licensed agent. The voice responded by saying, "Now I have one of my insurance consultants who will further assist you, so please stay with me, okay?"

37. The interaction was strikingly non-communicative and Defendants' responses were repetitive and contextually inappropriate to the point where it became apparent Plaintiff was communicating with soundboard technology rather than a live person.

38. These unwanted calls continued despite Mr. Henderson's cellular phone numbers being on the Do Not Call Registry since 2010.

39. Defendants did not have Plaintiff's consent to call him on his cellular telephone numbers.

40. Plaintiff did not request information regarding final expense life insurance.

41. Plaintiff requested Defendants stop contacting Plaintiff on or about July of 2020.

42. However, the calls continued.

43. As a result of the persistence of the unwanted solicitation calls, Mr. Henderson tried to identify the company calling him. Plaintiff there by attempted to gather information about the company that was behind the calls. Plaintiff asked on many occasions for the agent to state which company they were calling from and to provide a website so Plaintiff could do his own research. Most of these attempts resulted in refusal by the agent or the line being disconnected.

44. For instance, in a call placed by Defendants on November 4, 2020, Defendants' agent asked Plaintiff who would be a beneficiary to his insurance policy. Plaintiff stated that he would not provide that personal information to anyone other than a licensed agent, and requested more information about the company, namely where it was located. Defendants'

agent responded by saying "I am located in back of your home" and shortly thereafter hung up the phone and ended the call.

45. Ultimately, Plaintiff continued to get the unwanted calls, and continued to obtain the identity of the company/companies responsible for the unwanted calls.

46. During the March 3, 2021 call, Plaintiff spoke with "Amy". Upon requesting the identity of the company the agent worked for, the agent identified American Amicable Life Insurance. After "Amy" had gathered basic information, the call was transferred to "Geri." Plaintiff requested who the insurance would be through, and "Geri" identified Pioneer American Insurance.

47. At the end of this call, Plaintiff asked that the calls stop.

48. Defendants continued to call Plaintiff for purposes of harassing Plaintiff through March 2021.

49. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that her privacy has been invaded by Defendants.

50. The foregoing acts and omissions were in violation of the TCPA and Texas Business and Commercial Code.

## PRAYER FOR RELIEF

### Direct and Vicarious Liability

51. To the extent Defendants outsourced their illegal robocalling to any third party, Defendants are still liable for calls that violate the TCPA.

52. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many case without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even when third-party telemarketers are identifiable, solvent, and amendable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

53. Moreover, the May 2013 FCC ruling rejected a narrow view of the TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. at 6587 n. 107.

54. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593.

55. Defendants hired, permitted, and enjoyed the benefits of robocalling.

56. Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from unlawful calls.

57. For the counts identified below, telemarketers who operate anonymously and whose identities remain unknown placed calls pursuant to agreements with Defendants to solicit Pioneer and Amicable insurance policies.

58. For the counts identified below, Defendants are vicariously liable for the unlawful calls.

## COUNT I
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(b)

59. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

60. The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the calling has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

61. Defendants initiated calls to Plaintiff's telephone numbers using an automatically generated or pre-recorded voice.

62. Defendants' calls were not made for "emergency purposes."

63. Defendants' calls to Plaintiff's cellular telephones were made without any prior express written consent.

64. Defendants contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry and despite the fact that Plaintiff told Defendants to stop their telephone solicitations.

65. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

66. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

67. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## COUNT II
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(c)

68. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

69. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call-Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

70. Defendants' contacted Plaintiff despite the fact that Plaintiff has been registered on the Do Not Call Registry since 2010.

71. Defendants' acts as described above were done with malicious intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

72. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

73. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**WHEREFORE**, Plaintiff, **RICHARD HENDERSON**, respectfully prays for judgment as follows:

    a.    All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

    b.    Statutory damages of $500.00 per violative call (as provided under 47 U.S.C. § 227(b)(3)(B));

    c.    Additional statutory damages of $500.00 per violative call (as provided under 47 U.S.C. §227(c));

    d.    Treble damages of $1,500.00 per violative call (as provided under 47 U.S.C. § 227(b)(3));

    e.    Additional treble damages of $1,500.00 per call (as provided under 47 U.S.C. § 227(c);

    f.    Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c)); and

    g.    Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, RICHARD HENDERSON, demands a jury trial in this case.

Respectfully submitted,

Dated:

By: */s/ Jacob U. Ginsburg*
    Jacob U. Ginsburg, Esq.
    SDTX Attorney ID No. 3568914
    Kimmel & Silverman, P.C.
    30 East Butler Pike
    Ambler, PA 19002
    Phone: (215) 540-8888
    Facsimile: (877) 788-2864
    Email: teamkimmel@creditlaw.com

PLAINTIFF'S AMENDED COMPLAINT